IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHERMAN KYLE, III, | ) | CASE NO. 5:11-cv-01395 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| RICHARD GANSHEIMER, Warden | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

Petitioner Sherman Kyle, III ("Petitioner" or "Kyle") filed this habeas corpus action pursuant to 28 U.S.C. § 2254 on July 8, 2011.  Doc. 1.[1]  Respondent filed an Answer/Return of Writ.  Doc. 11.  Kyle filed his Traverse (Doc. 18), an amended Traverse (Doc. 26), and a supplemental Traverse (Doc. 28).[2]

Kyle challenges the constitutionality of his conviction and sentence in *State of Ohio v. Sherman Kyle, III*, Case No. CR 08 10 3401 (Summit County).  Doc. 1.  In that case, a jury found Kyle guilty of felonious assault with a firearm specification (Count One), having a weapon under a disability (Count Two), aggravated trespassing (Count Three), aggravated menacing (Count Four), failure to comply with an order or signal of a police officer (Count Five), and criminal damaging or endangering (Count Six).  Doc. 11-1, Exhibit 4, pp. 11-12.[3]  The trial court sentenced Kyle to an aggregate term of imprisonment of 11 years.  Doc. 11-1, Exhibit 5, pp. 13-14.

---

[1] Kyle omitted the signature page when filing his Petition but submitted it later.  Doc. 4.

[2] Respondent filed Replies to both the Amendment and Supplement.  Doc. 27; Doc. 30.

[3] Page number references refer to the page number for the cited ECF Doc.

Kyle's Petition presents the following five grounds for relief:

**Ground One:** Firearm conviction/weapon under disability is contrary to law because state failed to prove beyond a reasonable doubt that the firearm used was in fact operable.  Appellant was denied his constitutional right to due process of law.

**Ground Two:** Violation of United States constitutional right of due process.

**Ground Three:** Ineffective assistance of trial counsel.

**Ground Four:** Pursuant to Article IV 3(B) of the Ohio Constitution, the verdict in this case went against the manifest weight of the evidence.

**Ground Five:** Ineffective assistance of appellant [sic] counsel.

Doc. 1.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.[4]  For the reasons set forth below, the undersigned recommends that Kyle's petition for a writ of habeas corpus (Doc. 1) be **DENIED**.

## I.      FACTUAL BACKGROUND

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).  The Ninth District Court of Appeals summarized the facts underlying Kyle's conviction as follows:[5]

---

[4] The case was initially referred to United States Magistrate Judge James R. Knepp, II.  The case was subsequently reassigned to the undersigned Magistrate Judge pursuant to General Order 2011-18.

[5] The facts are taken from the Ninth District Court of Appeals' September 22, 2010, decision.  *State of Ohio v. Sherman Kyle, III,* 2010 WL 3676812, *3-5, ¶¶ 10-22 (Ohio Ct. App. Sept. 22, 2010); *see also* Doc. 11-1, pp. 81-96, ¶¶ 10-22.  Kyle has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect.  Accordingly, the state court's findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb,* 540 F. 3d at 397.

{¶ 10} At trial, Melissa Wartman testified that she and Kyle had been in a romantic relationship but that they had broken up earlier in the day on October 10, 2008. She testified that she had a few people at her house that evening and that she was with her guests when Kyle broke into the house and began to hit her. She testified that two guests were able to push Kyle outside, after which she and her friend Eric held the front door shut. Ms. Wartman testified that Kyle returned to the front door and began beating on it with a sawed-off shotgun. She testified that Kyle eventually broke out one of the windows in the door.

{¶ 11} Ms. Wartman testified that Eric ran away upstairs, thinking that Kyle had begun shooting. She testified that, without Eric to help hold the door, Kyle broke in and began hitting her all over with the butt of the shotgun, yelling, "Die, bitch. How does it feel, bitch?" She testified that she screamed for Eric, who returned. She testified that Kyle then chased Eric back upstairs with the gun, while she fled out the front door.

{¶ 12} Ms. Wartman testified that Kyle had both the sawed-off shotgun and a handgun that he kept in his car with him when he broke through her front door. She testified that she heard gunshots fired behind her outside as she ran away. She testified that she was "[a] hundred percent for certain there were gunshots fired." Her medical records verified her statements to medical providers that her ex-boyfriend struck her repeatedly with a sawed-off shotgun and that he had a handgun as well.

{¶ 13} Ms. Wartman testified that she believed that Kyle fired at her with the handgun because, as far as she knew, no one had ever purchased any ammunition for the shotgun. She testified at one point that she did not believe the shotgun still had "the trigger thing." She testified that the shotgun belonged to her nephew who brought it to her house when he was living with her. She asserted that she told him to get it out of her house, and when he did not, Kyle took it and put it in the trunk of his car, transported it to his home, and stored it in a closet.

{¶ 14} Eric Ray testified that he was at Ms. Wartman's home during the evening of October 10, 2008, when Kyle broke in and assaulted Ms. Wartman. He verified that other guests were able to force Kyle out of the house and that he helped Ms. Wartman hold the front door shut. Mr. Ray testified that Kyle yelled from outside that "I am going to go to my trunk." Mr. Ray testified that he believed that Kyle meant that he was going to get a gun or other weapon from his trunk. He testified that he saw Kyle open his trunk and then return to beat on the door with a shotgun. Mr. Ray testified that he ran upstairs but he returned when he heard Ms. Wartman scream for him. He testified that he saw Kyle beating the victim with the butt of the shotgun wherever he could hit her.

{¶ 15} Mr. Ray testified that he spoke with Kyle after his arrest. He testified that Kyle insinuated that he never had a gun during the incident. Mr. Ray testified that

he initially understood Kyle's remark as a threat not to testify, but Kyle clarified that he was not trying to threaten him.

{¶ 16} Deshawn Coleman testified that he was at Ms. Wartman's residence on the evening of October 10, 2008, when Kyle came in and attacked the victim. He testified that he and another guest were able to force Kyle outside. He testified that Kyle walked to his car, saying, "I am going to get my shit." Mr. Coleman testified that that is a euphemism for "gun." He testified that he saw Kyle retrieve a sawed-off shotgun from his car. He testified that Ms. Wartman later ran out of the house screaming, as Kyle chased her with a gun.

{¶ 17} Two neighbors testified that they heard a lot of noise, commotion, and screams around 10:00 p.m. on October 10, 2008. They testified that they saw Kyle open his trunk, remove something, and return to the victim's house. Another neighbor, Pearline Jackson, testified that she heard the victim screaming for help and a noise "like gun fires." She testified that she saw Kyle with a shotgun, as well as a handgun he retrieved from the back seat of his car. Ms. Jackson testified that he stuck the handgun in his pants. She testified that Kyle chased the victim outside with the shotgun, yelling, "Get your MF'ing a-s-s back here, b-i-t-c-h, before I kill you."

{¶ 18} Officer Jamie Rea of the Akron Police Department ("APD") testified that he was dispatched to the scene on reports that shots had been fired and someone was chasing someone else with a gun.

{¶ 19} Officer Patrick Didyk of the APD testified that he was dispatched to the scene for a "shots fired" call. He testified that various witnesses at the scene reported that shots had been fired. The officer testified that, although there was no tangible evidence found at the scene to indicate that shots had been fired, he has been to scenes where shots had been confirmed even in the absence of the presence of bullets or shell casings.

{¶ 20} Detective Jason Hill of the APD testified that he was the lead detective on this case. He testified that he did not order a gunshot residue test of Kyle's hands because Kyle had admitted having a shotgun during the attack on Ms. Wartman. The detective identified pieces of the shotgun or rifle found at the scene, including the butt of the weapon, several pieces of wood, and part of a plastic trigger guard.

{¶ 21} . . . There was evidence that Kyle in fact had two firearms, a sawed-off shotgun and a handgun, on his person during the incident on October 10, 2008. Kyle used the shotgun to beat the victim. While the victim testified that she did not believe that the shotgun was operable, she testified that was because no one had purchased ammunition for it. She testified that she was not aware of any mechanical defect that would prevent its operability, however. In addition, she testified that Kyle had removed the shotgun from her home some time earlier, placed it in his trunk, and later stored it in a closet in his home. Clearly, Kyle

returned it to his trunk after storing it in his closet.  There was no evidence that Kyle did not have the time or the means to procure ammunition in the interim for a weapon he decided to carry in his car.

{¶ 22} Ms. Wartman testified that Kyle chased her with a gun and fired several shots at her. She testified he used the handgun to fire at her and she ran around a corner to avoid being hit. Numerous witnesses testified that Kyle fired shots and threatened the victim. There was evidence that Kyle brandished firearms in a threatening manner and actually fired shots in an attempt to harm the victim.

*State of Ohio v. Sherman Kyle, III,* 2010 WL 3676812, *3-5, ¶¶ 10-22 (Ohio Ct. App. Sept. 22, 2010).

## II.    PROCEDURAL BACKGROUND

### A.    State Conviction

#### 1.  Indictment

On October 30, 2008, a Summit County Grand Jury indicted Kyle on nine counts: Count One – felonious assault, with a firearm specification and a repeat violent offender specification; Count Two -  having a weapon under disability; Count Three – aggravated trespass; Count Four – aggravated menacing; Count Five – failure to comply with order or signal of police officer; Count Six – criminal damaging or endangering; Count Seven – stop sign violation; Count Eight – red light violation; and Count Nine – open container violation.  Doc. 11-1, Exhibit 1, pp. 1-5.

#### 2.  Jury trial and sentencing

On October 31, 2008, Kyle, represented by counsel, entered a plea of not guilty.  Doc. 11-1, Exhibit 2, p. 6.  On February 3, 2009, Kyle's jury trial commenced and, on February 5, 2009, the jury found Kyle guilty of felonious assault with a firearm specification, having a weapon under disability, aggravated trespassing, aggravated menacing, failure to comply with order or signal of police officer, and criminal damaging or endangering.  Doc. 11-1, Exhibit 4, pp. 11-12.  The charges of stop sign violation, red light violation, and open container violation were dismissed.  Doc. 11-1, Exhibit 4, p. 11.  The trial court accepted the jury's findings and

scheduled Kyle's sentencing and hearing to determine the repeat violent offender specification for February 9, 2009.  Doc. 11-1, Exhibit 4, p. 11.

On February 9, 2009, the trial court determined that Kyle was a repeat violent offender as charged in the repeat violent offender specification to Count One but declined to enhance the sentence imposed on Kyle on the repeat violent offender specification to Count One.  Doc. 11-1, Exhibit 5, p. 13, 14.  Also, on February 9, 2009, the trial court sentenced Kyle to serve an aggregate sentence of 11 years.[6]  Doc. 11-1, Exhibit 5, pp. 13-14.  Kyle was also subject to post-release control.  Doc. 11-1, Exhibit 5, p. 14.

## B.      Direct Appeal

On March 9, 2009, Kyle, with counsel, filed a Notice of Appeal with the Ninth District Court of Appeals.  Doc. 11-1, Exhibit 6, p. 15.  On July 22, 2009, Kyle filed his Brief (Doc. 11-1, Exhibit 7, pp. 16-46) setting forth the following assignments of error:

I.      Defendant's conviction on a firearm specification and having a weapon under disability is contrary to the law because the State failed to prove beyond a reasonable doubt that the firearm involved was operable.

II.     The Trial Court erred by failing to *sua sponte* declare a mistrial when an apparent conflict of interest arose between trial counsel and appellant in the course of the trial.

III.    Sherman's trial counsel's performance fell below an objective standard of reasonableness.  This ineffectiveness unfairly prejudiced Ms. Sherman [sic] and denied her [sic] a fair trial.

---

[6] On Count One, the trial court sentenced Kyle to a 3 year mandatory sentence for possession of a firearm and a definite term of 8 years for felonious assault; on Count Two, the trial court sentenced Kyle to a definite term of 5 years for having a weapon under disability; on Count Three, the trial court sentenced Kyle to 180 days for aggravated trespassing; on Count Four, the trial court sentenced Kyle to 180 days for aggravated menacing; on Count Five, the trial court sentenced Kyle to 180 days for failure to comply with order or signal of police officer; and, on Count Six, the trial court sentenced Kyle to 90 days for criminal damaging or endangering.  Doc. 11-1, Exhibit 5, pp. 13-14.  The trial court ordered the firearm specification sentence to be served consecutively to the sentences imposed in Counts One through Six, and further ordered the sentences imposed in Counts One through Six to be served concurrently.  Doc. 11-1, Exhibit 5, p. 14.

IV.     Pursuant to Article IV § 3(B)(3) of the Ohio Constitution, the verdict of guilty was against the manifest weight of the evidence presented at Trial (Tr. Passim).

Doc. 11-1, Exhibit 7, p. 19.  On August 27, 2009, the State of Ohio filed a Motion to Dismiss Appeal/Vacate Sentencing Entry.  Doc. 11-1, Exhibit 8, pp. 47-50.  The State argued that the sentence was void and not a final appealable order because the trial court did not impose a mandatory period of post-release control.  Doc. 11-1, Exhibit 8, p. 47.   On February 4, 2010, a state appellate court Magistrate ordered further briefing on the State of Ohio's Motion to Dismiss.  Doc. 11-1, Exhibit 9, p. 51.  Following additional briefing (Doc. 11-1, Exhibit 10, pp. 53-55), the state appellate court denied the State's Motion to Dismiss (Doc. 11-1, Exhibit 11, p. 57).  On March 16, 2010, the State filed its brief on the merits.  Doc. 11-1, Exhibit 12, pp. 58-80.  On September 22, 2010, the state appellate court affirmed the judgment of the state trial court. Doc. 11-1, Exhibit 13, pp. 81-96.

On October 28, 2010, Kyle, *pro se*, filed an appeal with the Ohio Supreme Court.  Doc. 11-1, Exhibit 14, pp. 97-98.  In his Memorandum in Support of Jurisdiction (Doc. 11-1, Exhibit 15, pp. 99-131), Kyle raised the following propositions of law:

Proposition of Law No. I: Defendants conviction on a firearm specification and having a weapon under disability is contrary to the law because the State failed to prove beyond a reasonable doubt that the firearm involved was operable.

Proposition of Law No. 2: The Trial Court erred by failing to *sua sponte* declare a mistrial when the apparent conflict of interest arose between trial counsel and appellant in the course of the trial.

Proposition of Law No. 3: Sherman's trial counsel's performance fell below an objective standard of reasonableness.  This ineffectiveness unfairly prejudiced Mr. Sherman Kyle and denied him a fair trial.

Proposition of Law No. 4: Sherman's Appellate counsel's performance fell below an objective of reasonableness.  The ineffectiveness unfairly prejudiced Mr. Sherman Kyle and denied him a fair process by not raising them in the appeal.

> Proposition of Law No. 5: Pursuant to Article IV 3(B)(3) of the Ohio Constitution, the verdict of guilty was against the manifest weight of the evidence presented at Trial (Tr. Passim).

Doc. 11-1, Exhibit 15, p. 100.  The State filed a Waiver of Memorandum in Response.  Doc. 11-1, Exhibit 16, p. 132.  On February 2, 2011, the Ohio Supreme Court denied leave to appeal and dismissed Kyle's appeal as not involving any substantial constitutional question.  Doc. 11-1, Exhibit 17, p. 133.

## C.    Post-Conviction Proceedings

### 1.  2010 post-conviction proceedings

On March 17, 2010, pursuant to Ohio Rev. Code § 2929.191, the trial court scheduled a resentencing hearing for the purpose of correcting the judgment of conviction to include supervision information.  Doc. 11-1, Exhibit 18, p. 134.   On March 30, 2010, Kyle filed a motion for new trial and/or in the alternative motion to dismiss with prejudice for lack of jurisdiction.  Doc. 11-1, Exhibit 19, pp. 136-42.  In his March 30, 2010, motion, Kyle argued, in part, that his sentence was void and the trial court was without jurisdiction to resentence him (Doc. 11-1, Exhibit 19, p. 138) and that the State of Ohio "utilized prior alleged criminal cases of Mr. Kyle's as a Repeat Violent Offender Specification, in part as a means to enhance these charges . . ." (Doc. 11-1, Exhibit 19, p. 140).  The State filed its opposition and argued that the trial court was without jurisdiction to consider Kyle's Motion for New Trial while his direct appeal was pending.  Doc. 11-1, Exhibit 20, pp. 143-45.  On April 23, 2010, the trial court held that it had no jurisdiction while Kyle's appeal was pending.  Doc. 11-1, Exhibit 21, p. 146.

After the state appellate court issued its decision affirming the trial court's judgment, on October 27, 2010, Kyle filed a second motion for new trial and/or in the alternative motion to dismiss with prejudice for lack of jurisdiction.  Doc. 11-1, Exhibit 22, pp. 147-53.  As with his

first motion to dismiss and/or motion or new trial, in his October 27, 2010, motion, Kyle argued, in part, that his sentence was void and the trial court was without jurisdiction to resentence him (Doc. 11-1, Exhibit 22, p. 149) and that the State of Ohio "utilized prior alleged criminal cases of Mr. Kyle's as a Repeat Violent Offender Specification, in part as a means to enhance these charges . . ." (Doc. 11-1, Exhibit 22, p. 151).  On October 29, 2010, the State filed a memorandum in opposition to Kyle's motion and also requested that Kyle be advised of post-release control and that the sentencing entry be corrected.  Doc. 11-1, Exhibit 23, pp. 154-57. On December 9, 2010, the trial court denied Kyle's October 27, 2010, motion.  Doc. 11-1, Exhibit 24, pp. 158-59.  The trial court found that, based on the state of the law, the sentencing entry was not void and the entry was a final judgment.  Doc. 11-1, Exhibit 24, p. 158.  The trial court also concluded that it was still necessary for the trial court to hold a post-release control correction hearing and scheduled the hearing for December 28, 2010.  Doc. 11-1, Exhibit 24, p. 158.  At the December 28, 2010, hearing, the trial court's sentence was again an aggregate 11 years with provisions for post-release control.  Doc. 11-1, Exhibit 25, pp. 160-62.   Also, the trial court again declined to enhance the sentence imposed on Kyle on Count One for the repeat violent offender specification.  Doc. 11-1, Exhibit 25, p. 161.

### 2.  2011 post-conviction proceedings

On February 2, 2011, Kyle filed a petition to vacate or aside judgment of conviction or sentence and he requested an evidentiary hearing.  Doc. 11-1, Exhibit 26, pp. 163-85.  Kyle presented the following claims in his petition:

> Claim Number One: Defendants conviction on a firearm specification and having a weapon while under disability is contrary to the law because the State failed to prove beyond a reasonable doubt that the shotgun involved was in fact operable.

> Claim Number Two: The trial court erred by failing to *sua sponte* declare a mistrial when the apparent conflict arose between the trial counsel and the appellant during the course of the trial.
>
> Claim Number Three: Sherman's trial counsel's performance fell below an objective of reasonableness.  The ineffectiveness unfairly prejudiced Sherman Kyle and denied him a fair trial.
>
> Claim Number Four: Pursuant to Article IV 3 (B)(3) of the Ohio Constitution, the verdict of guilty was against the manifest weight of the evidence presented at Trial (Tr. Passim).

Doc. 11-1, Exhibit 26, pp. 168-75.  The State filed a motion to dismiss, arguing that Kyle's petition was not timely and was barred by Ohio Rev. Code § 2953.23.   Doc. 11-1, Exhibit 27, pp. 186-89.  The State argued that, because Kyle's claims in his petition were "based on facts or alleged facts that existed at the time of trial and there is no indication that defendant was unavoidably prevented from discovery of those facts in time to file a timely petition" and because there was no "decision from the U.S. Supreme Court with retroactive application to defendant's case," Kyle was unable to comply with Ohio Rev. Code § 2953.23.  Doc. 11-1, Exhibit 27, p. 187.  On February 28, 2011, the trial court granted the State's motion to dismiss Kyle's petition as untimely.  Doc. 11-1, Exhibit 28, pp. 190-91.  The trial court found that Kyle had not presented any basis for allowing his petition to be filed beyond the statutory time limit for filing a petition.[7]  Doc. 11-1, Exhibit 28, p. 191.

On April 28, 2011, Kyle filed a motion to set aside judgment and alternatively requested that the trial court grant him a new trial.  Doc. 11-1, Exhibit 28, pp. 192-210.  Kyle argued that he recently discovered that the verdict forms and jury instructions were defective, which warranted setting aside the verdict and sentence of the trial court.  Doc. 11-1, Exhibit 28, p. 192.  Kyle claimed that the verdict forms were defective because they did not contain the degree of

---

[7] The trial found that Kyle had not contended that he discovered new evidence or that he was unavoidably prevented from discovering the facts that he argued about.  Doc. 11-1, Exhibit 28, pp. 191.  Further, Kyle had not contended that there were any new rights pronounced by the United States Supreme Court.  Doc. 11-1, Exhibit 28, p. 191.

offense or a statement of justification on the aggravating elements of the offenses.  Doc. 11-1, Exhibit 28, p. 195.   On May 2, 2011, the State filed its memorandum in opposition, arguing that Kyle's arguments were barred by *res judicata*.  Doc. 11-1, Exhibit 29, pp. 211-13.  Kyle filed a response.  Doc. 11-1, Exhibit 31, pp. 214-15.  On May 13, 2011, the trial court denied Kyle's April 28, 2011, motion to set aside the judgment and sentence.  Doc. 11-1, Exhibit 32, p. 216.

Kyle filed a Notice of Appeal with the Ninth District Court of Appeals from the trial court's denial of his motion to set aside the judgment and sentence based on his claim that the verdict forms and jury instructions were defective.  Doc. 11-1, Exhibit 33, pp. 217-18.  In his appellate brief (Doc. 11-1, Exhibit 34, pp. 219-46), Kyle presented the following assignments of error:

1. The trial court committed plain and reversible error pursuant to *State v. Pelfrey and R.C. 2945.75 (A)(2)* in denying Appellant's motion to set aside judgment and sentence because the jury verdict form did not include the degree of the offense, nor the aggravating elements, which is a violation of his 5th, 6th and 14th amendment constitutional right.

2. The trial court committed plain and reversible error pursuant to *Crim. R. 52(B)* and *State vs. Grigg* in denying Appellant's motion to set aside judgment and sentence by way of defective reasonable doubt instructions being given to the jury Sullivan vs. Louisiana, which is a direct violation of the 5th, 6th, and 14th amendment constitutional rights.

Doc. 11-1, Exhibit 34, p. 220.  On July 28, 2011, the State filed its appellate brief arguing that Kyle's arguments were barred by *res judicata*.  Doc. 11-1, Exhibit 35, pp. 247-56.  Kyle filed a Reply.  Doc. 11-1, Exhibit 36, pp. 257-61.  At the time Respondent filed his Return of Writ in this habeas case, Kyle's appeal to the Ninth District Court of Appeals was pending (Doc. 11, p. 12) and Respondent filed a Motion to Dismiss based on a failure to exhaust (Doc. 12).  In response, Kyle filed a Motion for Stay and Abeyance (Doc. 13).  The State later reported that, on February 8, 2012, the Ninth District Court of Appeals denied Kyle relief on his appeal relating to

the verdict forms and jury instructions.  Doc. 30, p. 2.  Respondent also reported that Kyle had

not appealed the state appellate court's February 8, 2012, decision to the Ohio Supreme Court.

Doc. 30, pp. 2-3; *see State v. Kyle*, 2012 WL 394202 (Ohio Ct. App. Feb. 8, 2012).  Accordingly,

Respondent withdrew his Motion to Dismiss based on a failure to exhaust.  Doc. 30, p. 3.

Thereafter, this Court denied as moot Respondent's Motion to Dismiss and Kyle's Motion for

Stay and Abeyance.  Doc. 31; Doc. 32.

**D.**     **Federal Habeas Corpus**

On July 8, 2011, Kyle filed his petition for writ of habeas corpus (Doc. 1) wherein he

asserts five grounds for relief.  Kyle's Grounds One through Five are set forth at page 2 above.

In his Petition, Kyle provided statements of supporting facts with respect to each Ground for

Relief, which are discussed below.

### III.     LAW and ANALYSIS

**Standard of Review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 20)07).  In particular, the controlling

AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
>     application of, clearly established Federal law, as determined by the Supreme
>     Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
>     facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is "contrary to" clearly established federal law when the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts.  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000)).  A state court's adjudication only results in an "unreasonable application"

of clearly established federal law when the state court identifies the correct governing legal

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case.  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable

application' clause requires the state court decision to be more than incorrect or erroneous."

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established

law must be objectively unreasonable."  *Id.*

       In order to obtain federal habeas corpus relief, a petitioner must establish that the state

court's decision was "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v.

Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions

in the state criminal justice systems,' not a substitute for ordinary error correction through

appeal."  *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)

(Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision."  *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652,

664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388,

1398 (2011).

**Exhaustion**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

**Procedural Default**

A petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure

to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

**<u>Cognizability</u>**

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement violates the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29

(1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).  It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  A federal court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation omitted). Claims of state law error are not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

## A.      Ground One is without merit

In Ground One, Kyle presents a sufficiency of evidence argument.[8]  Doc. 1, p. 5.  He asserts that his "firearm conviction/weapon under disability is contrary to law because state failed to prove beyond a reasonable doubt that the firearm used was in fact operable."  Doc. 1, p. 5; Doc. 26.  Kyle's Petition sets forth the following in support of Ground One:

**Supporting Facts:**   Victim in this case testified in open court that the weapon (shotgun) used during the incident was inoperable (missing the trigger) because the weapon belonged to her nephew.  The victim also testified before the grand jury that the weapon was the same one she took from behind the couch and banished on the Defendant.  The alleged handgun purposed to be used during this incident was never actually seen by the victim who testified at trial, she thought the Defendant had a gun because he was known to carry one and that she heard what she thought was shots being fired at her as she fled the scene.  Investigating officers in this case testified that there was no evidence of shots being fired; therefore there was no need to submit GSR kit to collaborate the victims claim of shots being fired.  This clearly demonstrates that the officers at the scene did not believe the victims claims that shots were fired.  The State's witness Eric witnessed the Appellant entered the house through the kitchen door and did not offer any testimony that the Appellant had on or about his person any type of weapon.  The witness who lived across the street offered "hearsay" testimony that

---

[8] Kyle presented this argument in the state appellate court as Assignment of Error I.  Doc. 11-1, Exhibit 7, p. 19, pp. 22-29, and in the Ohio Supreme Court as Proposition of Law No. 1.  Doc. 11-1, Exhibit 15, p. 100, pp. 104-06.

17

her mother who was standing outside related to her while she was inside of the house calling the police that I removed a handgun from the trunk of the car.  The mother who allegedly saw the weapon did not testify.  No one witness testified that they saw a handgun.

Doc. 1, p. 5.

Kyle's Petition thus establishes that his Ground One sufficiency of the evidence claim relates to his convictions for the firearm specification and the weapons under disability charge and is based on his claim that the State presented insufficient evidence that a weapon was operable.[9]

On federal habeas review, a state court's determination regarding a sufficiency of evidence claim is entitled to a "double layer" of deference.  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 20*08).  The first layer of deference goes to the factfinder; the second goes to the state reviewing court as required by the AEDPA.  *Id.*  As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 20*09), deference is due to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, 443 U.S. 307 (1979), is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Brown v. Konteh*, 567 F.3d at 205.  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts."  *Jackson*, 443 at 319.  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational

---

[9] In his Amendment to his Traverse, Kyle appears to add to his Ground One argument a contention that the felonious assault conviction also is not supported by sufficient evidence.  Doc. 26, p. 2.  However, Ground One of Kyle's habeas petition relates only to his convictions for the firearm specification and the weapons under disability charge. Doc. 1, p. 5. While pleadings of *pro se* prisoners are liberally construed, *see Haines v. Kerner,* 404 U.S. 519, 595-96 (1972), a court is not required to address a theory of relief asserted only in a traverse but not in the habeas petition. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *Jalowiec v. Bradshaw*, 657 F.3d 293, 311-12 (6th Cir. 2011). Thus, the Court need not address Kyle's additional theory of relief.

decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  In making this

determination, a court does not reweigh the evidence or redetermine the credibility of the

witnesses.  *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  In addition,

circumstantial evidence alone may be sufficient to support a conviction.  *Newman v. Metrish*,

543 F.3d 793, 796 (6th Cir. 2008) (internal citation omitted).  In considering a sufficiency claim,

"circumstantial evidence is entitled to equal weight as direct evidence."  *Durr v. Mitchell*, 487

F.3d 423, 449 (6th Cir. 2007).

Ultimately, even if a review of the evidence were to lead to the conclusion that a rational

trier of fact could not have found guilt beyond a reasonable doubt, a federal habeas court "must

still defer to the state appellate court's sufficiency determination as long as it is not

unreasonable."  *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir.

2009).  A claim that the evidence was constitutionally insufficient to support a conviction is a

mixed question of law and fact.  *Starr v. Mitchell*, 234 F.3d 1270, at *3 (6th Cir. 2000)

(unpublished).  Thus, "a writ of habeas corpus may be issued for evidence insufficiency only if

the state court adjudication 'resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States,' 28 U.S.C. §2254(d)(1), or was based on 'an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,' 28

U.S.C. §2254(d)(2)."  *Id.*

First, as discussed above, deference is due to the jury's verdict based on the evidence before

it.  *Brown*, 567 F.3d at 205.  In assessing whether the jury's decision was a rational one, it is not

for this Court to reweigh the evidence or judge the credibility of the witnesses.  *Matthews*, 319

F.3d at 788.  Kyle does not dispute that he had a shotgun under his control (Doc. 26, p. 4) but

asserts that the shotgun was inoperable because of a missing trigger, that Ms. Wartman confirmed the

inoperability of the shotgun through her testimony, and that no witness testified that they saw a handgun (Doc. 1, p. 5; Doc. 26, pp. 4-5).  However, there was testimony from a neighbor, Pearline Jackson, that, on the night of October 10, 2008, she heard loud noises that sounded like gunfire and she also observed the defendant putting the shotgun inside his trunk and retrieving a handgun from the backseat of his car and sticking it in the waistband of his pants.[10]  Doc. 11-5, p. 32-35, 37, 59 (Transcript Vol. IV of VIII).   Ms. Wartman testified that, when Kyle pushed through her door, he had a shotgun with him.  Doc. 11-5, p. 74, 99 (Transcript IV of VIII).  Ms. Wartman testified that she did not know whether the shotgun worked or not, and that, as far as she knew, the shotgun could not have worked because there were no bullets.  Doc. 11-5, p. 128 (Transcript Vol. IV of VIII).  She also testified that she was not aware of anything wrong with the shotgun mechanically that would cause it not to work if there were bullets (Doc. 11-5, p. 128 (Transcript Vol. IV of VIII)) and she had never mechanically tried to work the shotgun but she did not think the "trigger thing" was still on it (Doc. 11-7, pp. 31-32 (Transcript Vol. VI of VIII)).  A few days following the incident, Ms. Wartman presented to the DOVE/SANE unit at St. Thomas Hospital[11] for follow up (Doc. 11-5, pp. 105-106 (Transcript IV of VIII) and records from that visit reflected that Ms. Wartman reported that there was a shotgun _and_ handgun.  (Doc. 11-7, pp. 21-22, 24 (Transcript Vol. VI of VIII)).  Ms. Wartman also testified that, as she was running out of the house, she heard gunshots behind her and Kyle shot at her with the handgun, the one that Kyle kept in his trunk.  Doc. 11-5, p. 75 (Transcript IV of VIII); Doc. 11-6, pp. 46-47 (Transcript V of VIII); Doc. 11-7, p. 29, 32 (Transcript Vol. VI of VIII).  She

---

[10] Kyle's argument that Pearline Jackson did not actually witness the events that she was testifying about (Doc. 26, pp. 3-4-) is without merit.  During her testimony, Ms. Jackson confirmed that, although her mother-in-law was present and witnessed the events on the night of October 10, 2008, and was calling out what she was observing, Ms. Jackson herself witnessed the events to which she testified and relayed to the 911 operator, including seeing a gun. Doc. 11-5, pp. 47-49, 53-54 (Transcript Vol. IV of VII).

[11] DOVE stands for Developing Options for Violent Emergencies.  Doc. 11-1, Exhibit 13, p. 92, ¶ 36.  Upon release from the hospital, Ms. Wartman was referred to the DOVE/SANE unit at St. Thomas Hospital.  Doc. 11-5, p. 105 (Transcript IV of VIII); Doc. 11-7, pp. 21-25 (Transcript VI of VIII).  About a week after the assault, Ms. Wartman provided her account of the assault to the DOVE/SANE unit and she received referrals for victims assistance and counseling services.  Doc. 11-5, pp. 105-06 (Transcript IV of VIII); Doc. 11-7, pp. 21-25 (Transcript VI of VIII).

testified that she was "[a] hundred percent for certain there were gunshots fired [that evening.]"  Doc. 11-6, p. 47 (Transcript V of VIII).

Considering the evidence submitted to the jury, including the foregoing evidence that there was both a shotgun and handgun as well as shots being fired, the undersigned concludes under *Jackson* that, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the firearm specification or weapon under disability charges of which Kyle was convicted beyond a reasonable doubt. *See Jackson*, 443 U.S. 307.

Second, even if a review of the evidence were to lead to the conclusion that a rational trier of fact could not have found guilt beyond a reasonable doubt, deference is due to the court of appeals' sufficiency determination as long as it is not unreasonable.  *Brown*, 567 F.3d at 205*; see also White*, 602 F.3d at 710.  In addressing Kyle's sufficiency of the evidence claim, the Ohio Court of Appeals applied the federal standard through use of state law that relied upon the federal standard and stated:

> {¶ 5} Kyle argues that his convictions on the firearm specification and the charge of having weapons while under disability are not supported by sufficient evidence. This Court disagrees.

> {¶ 6} The law is well settled:

>> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Galloway* (Jan. 31, 2001), 9th Dist. No. 19752, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

> The test for sufficiency requires a determination of whether the State has met its burden of production at trial. *State v. Walker* (Dec. 12, 2001), 9th Dist. No.

20559; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541.

{¶ 7} Kyle was charged with a firearm specification in conjunction with the charge of felonious assault. R.C. 2941.145 requires proof beyond a reasonable doubt that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." A "firearm" is:

> "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable. When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representation and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(1) and (2).

{¶ 8} Kyle was charged with having weapons while under disability in violation of R.C. 2923.13(A)(2)/(3), which states:

> "Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence[, or] [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."

{¶ 9} Kyle challenges the sufficiency of his conviction only with regard to the evidence regarding the operability of the firearm involved in the commission of the acts. As we have stated:

> "This Court 'evaluate[s] the evidence of a firearm's operability by examining the totality of the circumstances.' *State v. McElrath* (1996), 114 Ohio App.3d 516, 519, 683 N.E.2d 430, citing *State v.*

> *Murphy* (1990), 49 Ohio St.3d 206, 208, 551 N.E.2d 932. In
> *McElrath,* this Court found that in cases where no shots are fired
> and the firearm is not recovered, circumstantial evidence, such as
> the representations and actions of the gun operator, are of crucial
> importance. *Id.* Specifically, this Court found that " 'the implicit
> threat of brandishing a firearm" supports an inference that the
> firearm was operable.' *State v. Williams* (Dec. 27, 2000), 9th Dist.
> No. 19559, citing *McElrath,* 114 Ohio App.3d 519-520. Moreover,
> we have a long precedent of finding operability sufficiently
> established, even though a weapon is not recovered, when one
> brandishes a gun in a threatening manner and the victim testifies to
> the threat and describes the gun. See *McElrath* and *Williams* supra;
> see, also, *State v. Hayes,* 9th Dist. No. 22168, 2005-Ohio-1464[,]
> and *State v. Young* (May 26, 1993), 9th Dist. No. 15927." *State v.*
> *Ware,* 9th Dist. No. 22919, 2006-Ohio-2693, at ¶ 13.

In addition, the Ohio Supreme Court has held that "where an individual
brandishes a gun and implicitly but not expressly threatens to discharge the
firearm at the time of the offense, the threat can be sufficient to satisfy the state's
burden of proving that the firearm was operable or capable of being readily
rendered operable." *Thompkins,* 78 Ohio St.3d at 384, 678 N.E.2d 541.


\*\*\*

{¶ 21} Reviewing the evidence in a light most favorable to the State, this Court
concludes that any rational trier of fact could have found that the operability of
the firearm was proved beyond a reasonable doubt. See *Jenks* at paragraph two of
the syllabus. There was evidence that Kyle in fact had two firearms, a sawed-off
shotgun and a handgun, on his person during the incident on October 10, 2008.
Kyle used the shotgun to beat the victim. While the victim testified that she did
not believe that the shotgun was operable, she testified that was because no one
had ever purchased ammunition for it. She testified that she was not aware of any
mechanical defect that would prevent its operability, however. In addition, she
testified that Kyle had removed the shotgun from her home some time earlier,
placed it in his trunk, and later stored it in a closet in his home. Clearly, Kyle
returned it to his trunk after storing it in his closet. There was no evidence that
Kyle did not have the time or the means to procure ammunition in the interim for
a weapon he decided to carry in his car.

{¶ 22} Ms. Wartman testified that Kyle chased her with a gun and fired several
shots at her. She testified he used the handgun to fire at her and she ran around a
corner to avoid being hit. Numerous witnesses testified that Kyle fired shots and
threatened the victim. There was evidence that Kyle brandished firearms in a
threatening manner and actually fired shots in an attempt to harm the victim.
Accordingly, the State presented sufficient evidence to establish the operability of
two firearms in his possession at the time of the incident. Therefore, the State

23

presented sufficient evidence to establish the elements of the firearm specification and the charge of having weapons while under disability. Kyle's first assignment of error is overruled.

*State of Ohio v. Sherman Kyle, III,* 2010 WL 3676812, *1-5, ¶¶ 1-9, 21-22 (Ohio Ct. App. Sept. 22, 2010).

The Ohio Court of Appeals indicated that "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Doc. 11-1, Exhibit 13, p. 83, ¶6. This is the correct standard under *Jackson* and Petitioner has failed to demonstrate that the Ohio Court of Appeals' decision is contrary to or an unreasonable application of this clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented.

Accordingly, for the foregoing reasons, the Petitioner should be denied federal habeas relief on Ground One.

**B.     Ground Two is procedurally defaulted, not cognizable and/or without merit**

    **1.  Ground Two is procedurally defaulted**

In Ground Two, Kyle contends that the trial court's failure to *sua sponte* declare a mistrial based on an alleged conflict of interest between Kyle and his trial counsel violated his right to a fair trial and entitles him to federal habeas corpus relief. Doc. 1, p. 6.   Kyle's Petition states the following in support of Ground Two:

> **Supporting Facts:**  The Court did not protect Appellant's constitutional rights to a fair trial and representation of legal counsel by failing to declare a mistrial when it became known to the Court that a conflict of interest existed between trial counsel and Appellant when the victim testified in open court that she had a previous and ongoing professional relationship with trial counsel.  The victim admitted that she had met with trial counsel in his office to discuss trial strategy. This was done without the knowledge of Appellant.  Victim also admitted she had

committed perjury by testifying at the Grand Jury proceeding to a different set of facts in the case.

Doc. 1, p. 6.

Respondent argues that Ground Two is procedurally defaulted.[12]  Doc. 11, pp. 19-27. Where the issue involves a petitioner's failure to observe a state procedural rule, analysis under *Maupin* is necessary.  *Stojetz v. Ishee*, 389 F.Supp.2d 858, 882 (S.D. Ohio 2005).  Respondent argues that the four-part *Maupin* test is met here because Kyle failed to comply with Ohio's contemporaneous objection rule, the state court enforced the procedural rule when it conducted a "plain error" review, Ohio's contemporaneous objection rule is an adequate and independent state procedural rule, and Kyle cannot demonstrate cause and prejudice for the default.  Doc. 11, pp. 24-27.  The undersigned agrees.

Under the first *Maupin* prong, the issue is whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule.  *Maupin,* 785 F.2d at 138.  Here, the State asserts and the record confirms that Kyle failed to object or move for a mistrial based on the alleged conflict of interest between him and his attorney.  Doc. 11, pp. 24-25.   Thus, the first *Maupin* prong is satisfied.

Because there was no objection nor a request for a mistrial, the Ohio appellate court reviewed Kyle's assignment of error regarding the trial court's failure to *sua sponte* declare a mistrial under the "plain error" standard.  Doc. 11-1, Exhibit 13, pp. 88-90, ¶¶ 23-27.  By conducting the "plain error" review, the state court enforced Ohio's contemporaneous objection rule.  *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).   Thus, the second *Maupin* prong, i.e., whether the state court enforced the procedural rule, is satisfied.  *Maupin,* 785 F.2d at 138.

---

[12] Alternatively, Respondent argues that Ground Two asserts an error of state law and, unless there is a denial of fundamental fairness in the trial process, such a claim is not cognizable in federal habeas corpus.  Doc. 11, pp. 15-19.  The issue of cognizability is discussed in Section III (B)(2) below.

Under the third *Maupin* prong, the issue is whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim.  *Maupin,* 785 F.2d at 138.  Ohio's contemporaneous objection rule is an adequate and independent state grounds for precluding federal habeas review.  *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004); *see also Hinkle*, 271 F.3d at 244.  Further, even though the Ohio Court of Appeals conducted a "plain error" review of Kyle's claim concerning the trial court's failure to *sua sponte* declare a mistrial, that review does not constitute a waiver of the procedural default.  *See Hinkle*, 271 F.3d at 244; *see also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (indicating that "controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules" but noting that *Engle v. Issac*, 456 U.S. 107, 135 n. 44 (1982) suggests "that review for plain error might constitute waiver of a state procedural bar.").

Under the fourth *Maupin* prong, the issue is whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin,* 785 F.2d at 138.  As it relates to Ground Two, in his Traverse, Kyle summarily argues, as cause for the procedural default, that: "Had not counsel fell in his performance with respect to ground one and ground two of the petition, the Petitioner would have objected and challenged the allegations/claims presented in the original writ. (see ground three, supporting facts) either at trial court or on appeals."  Doc. 18, pp. 10-11.  Although ineffective assistance of counsel may serve as cause for a procedural default, as discussed more fully in connection with the Court's analysis of Ground Three, Kyle has failed to demonstrate constitutionally ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).  *Murray v. Carrier*, 477 U.S. 478, 485-92 (1986).  Thus, Kyle cannot demonstrate cause for the procedural default.

Moreover, other than a general statement by Kyle that he was prejudiced by counsel's conduct (Doc. 18, p. 11), Kyle has failed to argue or demonstrate actual prejudice sufficient to overcome procedural default.[13]  *Engle v. Issac*, 456 U.S. 107, 129 (1982) (to overcome a procedural default, a petitioner must demonstrate cause and *actual* prejudice) (emphasis supplied).

Based on the foregoing, Ground Two is procedurally defaulted and the Petitioner should be denied federal habeas relief on Ground Two.

### 2.  Ground Two is not cognizable

As noted above, in addition to arguing that Ground Two is procedurally defaulted, Respondent argues that Ground Two is not cognizable because in Ground Two Kyle asserts an error of state law, i.e., failure to *sua sponte* declare a mistrial, and unless there is a denial of fundamental fairness in the trial process, such a claim is not cognizable in federal habeas corpus. Doc. 11, pp. 15-19.   As determined above, Ground Two is procedurally defaulted.  However, even if not procedurally defaulted, Ground Two is not cognizable in federal habeas corpus.

When reviewing whether the trial court erred by not *sua sponte* declaring a mistrial, the state appellate court assessed whether the trial court abused its discretion.  Doc. 11-1, Exhibit 13, pp. 88-89, ¶¶ 24-25.  The appellate court concluded that there was no conflict of interest and therefore also concluded that there was nothing to indicate that a mistrial was warranted.  Doc. 11-1, Exhibit 13, pp. 89-90, ¶ 27.  Thus, the state appellate court overruled Kyle's assignment of error based on his claim that the trial court erred by failing to *sua sponte* declare a mistrial.  Doc.

---

[13] Kyle also has not demonstrated that the procedural default should be overcome on the basis that he is actually innocent such that Ground Two should be considered in order to prevent a miscarriage of justice. A claim of actual innocence requires a showing of "new reliable evidence" and requires a showing of factual innocence, not mere legal insufficiency.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) for the proposition that "actual innocence means factual innocence, not mere legal insufficiency") (internal quotations omitted).  To the extent that Kyle argues that the jury verdict forms and/or jury intructions constitute new evidence (Doc. 28, pp. 16-20, 21-22), his argument is unavailing because the jury verdict forms are not new, nor are jury instructions that were provided to the jury at the time of the trial.

11-1, Exhibit 13, pp. 89-90, ¶ 27.  Generally, the issue of whether or not the trial court abused its

discretion is a state law issue.  *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) ("a state

trial court's alleged abuse of discretion, without more, is not a constitutional violation.").  Thus,

since it is not the province of a federal habeas court to re-examine state court determinations on

state law questions, it is not the province of this Court to re-examine the state court

determination that the trial court did not abuse its discretion by not declaring a mistrial.[14]  *See*

*Estelle*, 502 U.S. at 67-68.

      For the foregoing reasons, the Petitioner should be denied federal habeas relief on

Ground Two.

### 3.  Ground Two is without merit

      Even if this Court were to determine that, in Ground Two, Kyle sufficiently presented a

cognizable federal habeas claim, the analysis would not be whether the trial court should have

declared a mistrial but, rather, whether the state appellate court's decision that the trial court did

not abuse its discretion was an unreasonable application of clearly established federal law.  *See*

*Grier v. Richland County Correctional Inst.*, 2012 WL 5271721, *14 (N.D. Ohio Sept. 20, 2012)

(quoting *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010), *report and recommendation adopted*, 2012

WL 5271710 (N.D. Ohio Oct. 23, 2012).

      In reviewing Kyle's claim, the state appellate court stated, in part:

> {¶ 26} Kyle asserts that a mistrial was warranted because of a conflict of interest
> which arose between him and his trial counsel when the complaining witness
> Melissa Wartman testified. "The term 'conflict of interest' bespeaks a situation in
> which regard for one duty tends to lead to disregard of another." *State v. Getsy*
> (1998), 84 Ohio St.3d 180, 187, 702 N.E.2d 866, quoting *State v. Manross* (1988),
> 40 Ohio St.3d 180, 182, 532 N.E.2d 735.  Kyle asserts that Ms. Wartman
> implicated his trial counsel in a scheme to fabricate testimony in order to "get rid

---

[14] As discussed below in Section III(C)(3), even if considered on the merits, under the AEDPA, Kyle is unable to
demonstrate that the state court's decision was an unreasonable application of clearly established federal law.

of the felony." Kyle asserts that Ms. Wartman's testimony necessarily required that his trial counsel testify in the case.

{¶ 27} A review of the record indicates that Kyle misconstrues Ms. Wartman's testimony. While she admitted that she conferred with Kyle and his mother to concoct a story in which Kyle did not have a firearm during the assault, she never testified that Kyle's trial counsel was involved in the fabrication. Moreover, she never testified that Kyle's trial counsel was aware that she had lied to him about the incident or regarding her testimony to the grand jury. Ms. Wartman admitted that she lied earlier to protect Kyle at a time when she felt responsible for his attack. She testified, however, that with counseling she has come to realize that Kyle caused his situation himself by engaging in violent criminal acts and that she is not to blame for his behavior. Her testimony did not require testimony by defense counsel in response. Her credibility as a witness remained for consideration by the trier of fact. Defense counsel's integrity and duty to his client were in no way impugned by Ms. Wartman's testimony. Accordingly, there was no conflict of interest between trial counsel's duty to himself and his duty to his client. Therefore, there was nothing to indicate that a mistrial was warranted and the trial court did not err by failing to sua sponte grant a mistrial. Kyle's second assignment of error is overruled.

Doc. 11-1, Exhibit 13, pp. 89-90, ¶¶ 26-27.

Kyle has not attempted to  nor can he demonstrate that the state court's decision was an unreasonable application of clearly established federal law or "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  Thus, even if Ground Two is reviewed on the merits, federal habeas relief is not warranted.

For the foregoing reasons and for the reasons discussed above relative to Ground Two, the Petitioner should be denied federal habeas relief on Ground Two.

### C.    Ground Three is procedurally defaulted in part and/or without merit.

In Ground Three, Kyle asserts that his trial counsel was ineffective.  Doc. 1, p. 7.  Kyle's

Petition sets forth 13 alleged instances[15] of ineffective assistance of trial counsel:

> **Supporting Facts:**  Trial counsel's performance fell below the standard one
> would expect from a lawyer practicing law in the State of Ohio.  [1][16] Trial
> counsel did not demonstrate the perjury the victim it this case committed in open
> court.  [2] Counsel did not demonstrate that the weapon allegedly used in this
> crime was in fact an inoperable weapon.  Authorities even expressed there were
> no signs of gun shots.  [3] Counsel engaged in an inappropriate relationship with
> the victim in this case.  [4] Counsel failed to challenge the defective jury verdict
> forms and [5] did not challenge the Court for its improper jury instructions.  [6]
> The court had to step in and suggest that counsel object to the hearsay testimony
> being offered by one of the key witnesses.  Counsel over all was not prepared to
> try this case at an acceptable level of performance.[17]   [7]   Trial counsel's
> performance fell below an acceptable standard when he failed to make key
> objections during trial that the court had to remind him of in order to protect
> Appellant's rights.   [2] Trial counsel never challenged the operability of the
> shotgun when the victim herself stated the gun was broken because she had first
> pulled the weapon on Appellant.  [8] Counsel did not object to the Dove report
> being completed by someone else other than the victim.  [9] Trial counsel allowed
> the State without challenge to submit pieces of wood as evidence of a firearm.
> [10] Trial counsel never challenged the victim's mental state even though
> knowledge existed that she had mental health issues and was being medicated for
> the same.  [7] Trial counsel allowed the State to regularly lead witnesses through
> their testimony.  [11] Trial counsel never introduced the evidence of drug and
> alcohol being present at the scene of the crime, [12] [trial counsel] allowed one
> key witness to go un-subpoenaed because she had a small child present and was
> afraid to be implicated because of a fear child services might be involved.  [13]
> Trial counsel refused to defend this case as a crime of passion, that the Appellant
> walked in on his girlfriend having an orgy with numerous people with children
> present.

Doc. 1, p. 7.

---

[15] The Court's categorization of Kyle's claims as 13 instances of alleged ineffective assistance of trial counsel is the result of combining statements with similar facts.

[16] The numbers in brackets are not in the Petition.  They have been added here for ease of reference.

[17] This statement is a general statement that trial counsel was ineffective but does not allege a specific instance of alleged ineffective assistance.

As discussed below, of the 13 instances of alleged ineffective assistance of trial counsel, 10 are procedurally defaulted and the remaining claims are without merit.

### 1.  The Ground Three claims that were not fairly presented are procedurally defaulted

In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  When Kyle presented his ineffective assistance of trial counsel claim to the state courts, he based his claim on the following:

(1) Notwithstanding an alleged conflict of interest between trial counsel and his counsel that arose because of trial counsel's relationship with the victim, trial counsel failed to request a mistrial;

(2) Trial counsel failed to object to the admission of the DOVE report even though the state did not present a witness to authenticate the document; and

(3) Trial counsel did not object to the state's attempts to lead witnesses through direct examinations.

Doc. 11-1, Exhibit 7 (Kyle's state appellate brief), pp. 33-35; Doc. 11-1, Exhibit 15 (Kyle's memorandum in support of jurisdiction), pp. 108-09.

The three instances of alleged ineffective assistance presented by Kyle to the state courts correspond, respectively, to instances [3], [8], and [7] stated in his Petition (and quoted above) as Supporting Facts with respect to Ground Three.  However, Kyle's Petition contains an additional 10 instances of alleged ineffectiveness of trial counsel, i.e., instances [1], [2], [4], [5], [6], [9], [10], [11], [12] and [13] quoted above.   Kyle cannot demonstrate that those 10 instances of alleged ineffective assistance of trial counsel were fairly presented to the state courts in the same manner that he now presents them in his habeas Petition, nor can he show that state court remedies remain available to him to raise those claims.  Accordingly, those 10 claims of ineffective assistance of trial counsel are procedurally defaulted unless Kyle can overcome the

default.  *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681 (a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts).

To overcome the procedural default bar, Kyle must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or must show that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750. To the extent that Kyle asserts ineffective assistance of appellate counsel as cause for not fairly presenting the 10 claims of ineffective assistance of trial counsel (Doc. 18, p. 10), to constitute cause, Kyle's ineffective assistance of appellate counsel claim also must have been preserved for habeas review.  *Edwards v. Carpenter,* 529 U.S. 446, 452–53 (2000) (finding that ineffective assistance of counsel cannot serve as cause to excuse a procedural default if that claim itself has been procedurally defaulted).  In his memorandum in support of jurisdiction to the Ohio Supreme Court, Kyle argued ineffective assistance of appellate counsel but he did not argue that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel and Kyle has failed to demonstrate a reason for not presenting that argument in his memorandum in support of jurisdiction.  Doc. 11-1, Exhibit 15, pp. 109-10.  Thus, Kyle cannot demonstrate cause for his procedural default.  Further, as discussed in connection with Ground Two, Kyle cannot demonstrate that the procedural default should be overcome on the basis that he is actually innocent.  *See* n.13 above.

Since Kyle is unable to overcome the procedural default of the 10 claims of ineffective assistance of trial counsel noted above, the Petitioner should be denied federal habeas relief with respect to those claims on Ground Three.

### 2. The Ground Three claims that were fairly presented are without merit

As discussed above, when Kyle presented his ineffective assistance of trial counsel claim to the state courts, he based his claim on the following:

(1) Notwithstanding an alleged conflict of interest between trial counsel and his counsel that arose because of trial counsel's relationship with the victim, trial counsel failed to request a mistrial;

(2) Trial counsel failed to object to the admission of the DOVE report even though the state did not present a witness to authenticate the document; and

(3) Trial counsel did not object to the state's attempts to lead witnesses through direct examinations.

Doc. 11-1, Exhibit 7 (Kyle's state appellate brief), pp. 33-35; Doc. 11-1, Exhibit 15 (Kyle's memorandum in support of jurisdiction), pp. 108-09. Thus, Kyle can be said to have fairly presented to the state courts the instances of alleged ineffective assistance of trial counsel numbered above as instances [3], [7], and [8], i.e., [3] trial counsel engaged in an inappropriate relationship with the victim in this case; [7] trial counsel's performance fell below an acceptable standard when he failed to make key objections during trial that the court had to remind him of in order to protect Appellant's rights; trial counsel allowed the State to regularly lead witnesses through their testimony;[18] and [8] trial counsel did not object to the Dove report being completed by someone else other than the victim.

---

[18] As part of his state court appeal wherein he argued that trial counsel was ineffective for allowing the State to lead its witnesses, Kyle argued that "[i]n one instance the Court recognized the error and advised the state to refrain from asking leading questions." Doc. 11-1, Exhibit 7 (Kyle's state appellate brief), p. 35; Doc. 11-1, Exhibit 15 (Kyle's memorandum in support of jurisdiction), p. 109. Accordingly, the Court has considered Kyle's claim that trial counsel's performance fell below an acceptable standard when he failed to make key objections during trial that the court had to remind him of in order to protect Appellant's rights as part of his claim that trial counsel allowed the State to regularly lead witnesses through their testimony.

Doc. 1, p. 7; Doc. 11-1, Exhibit 7 (Kyle's state appellate brief), pp. 33-35; Doc. 11-1, Exhibit 15 (Kyle's memorandum in support of jurisdiction), pp. 108-09.    The state court of appeals adjudicated these claims on the merits.  Doc. 11-1, Exhibit 13, pp. 90-93, ¶¶ 28-39.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. Amend. VI.  A defendant has a Sixth Amendment right not just to counsel but to "reasonably effective assistance" of counsel.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).   "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged from the benefit of hindsight."  *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

To establish that his attorney was constitutionally ineffective, Kyle must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.   "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689.

To satisfy the second, "prejudice," prong of the *Strickland* test, a petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the outcome of the trial would have been different.  *Id.* at 694.  "An error by counsel, even if professionally

34

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990) (quoting *Strickland,* 466 U.S. at 691).

Since the three claims of ineffective assistance of counsel listed above were adjudicated on the merits by the Ohio Court of Appeals, this Court must give deference to that adjudication. *Perkins v. McKee*, 411 Fed. App'x. 822, 828 (6th Cir. 2011).  The Supreme Court recently emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter,* 131 S. Ct. at 786-88.

In addressing Kyle's claims, the Ohio Court of Appeals correctly recognized that *Strickland* governs claims of ineffective assistance of counsel.  Doc. 11-1, Exhibit 13, pp. 90-92, ¶¶ 29-34.  After enunciating the *Strickland* standard for claims of ineffective assistance of counsel, the Ohio Court of Appeals evaluated Kyle's three claims of ineffective assistance of trial counsel and stated:

> {¶ 35} Kyle first argues that trial counsel was ineffective for failing to move for a mistrial when it became apparent that a conflict of interest had arisen. This Court has already concluded that no conflict of interest arose due to Ms. Wartman's testimony because she never implicated defense counsel in her scheme to

fabricate a story which precluded Kyle's conviction for a felony offense. Kyle's argument in this regard fails.

{¶ 36} Kyle next argues that trial counsel was ineffective for failing to object to the admission of the victim's medical records from DOVE (Developing Options for Violent Emergencies) because the records were not authenticated. In support, Kyle cites only *State v. Stahl,* 111 Ohio St.3d 186, 855 N.E.2d 834, 2006-Ohio-5482, which addresses Confrontation Clause issues and is not relevant to his argument.

{¶ 37} The DOVE records were endorsed and certified as "true, accurate and complete copies" of the records by a "duly authorized representative under whose supervision copies of DOVE records are prepared." Ignoring this, Kyle argues there was no authentication because Ms. Wartman was not competent to authenticate a document she did not prepare. However, the State merely asked her whether she had in fact given the history to the medical providers as reflected in the records. Even assuming the DOVE records were not properly authenticated, Kyle fails to assert how their admission was prejudicial, particularly in light of the fact that Ms. Wartman independently testified to the matters noted in the medical history notes.

{¶ 38} Kyle concludes this argument by asserting that trial counsel derived "no tactical advantage into allowing inadmissible hearsay evidence to come in at trial." Statements made for purposes of medical diagnosis or treatment, however, constitute an exception to the hearsay rule. Evid.R. 803(4). Accordingly, Kyle's argument that trial counsel was ineffective in regard to his failure to object regarding the DOVE records is not well taken.

{¶ 39} Finally, Kyle argues that trial counsel was ineffective for failing to object to the assistant prosecutor's leading of witnesses during direct examination. In support, Kyle cites to only one page of the transcript, where he emphasizes that the trial court itself recognized the State's error. Trial counsel had objected to the leading nature of the State's questions. On the page of the transcript cited by Kyle, the trial court stated, "Mr. [assistant prosecutor], you are leading the witness and there had been an objection. Please." Kyle fails to cite to any parts of the record which support his argument as required by App.R. 16(A)(7). Even so, trial counsel's tactical decision not to object to every single leading question, particularly where he had already noted his objection for the record, does not constitute ineffectiveness. Kyle's third assignment of error is overruled.

Doc. 11-1, Exhibit 13, pp. 92-93, ¶¶ 35-39.

Kyle simply restates arguments presented in connection with his direct appeal.  Doc. 28,

pp. 6-7.  He has not attempted to nor can he demonstrate that the state court's decision was an

unreasonable application of clearly established federal law or "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).    Thus, federal habeas relief is not warranted.

For the foregoing reasons, the Petitioner should be denied federal habeas relief on Ground Three.

## D.      Ground Four is not cognizable, as Petitioner Admits

In Ground Four, Kyle argues that the verdict in his case is against the manifest weight of the evidence.  Doc. 1, p. 9.  Respondent argues that Ground Four is not cognizable in federal habeas corpus.  Doc. 11, p. 28.  In his Answer to Respondent's Return of Writ (Traverse), Kyle concedes that Ground Four, which is a manifest weight of the evidence claim, is not cognizable in federal habeas corpus.  Doc. 18, p. 4.  Even if Kyle did not concede that Ground Four was not cognizable, since "[a] 'manifest weight of evidence' claim, which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only," *Brown v. Moore*, 2008 WL 4239160, *8 (S.D. Ohio 2008) (citing 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1998)), Kyle's manifest weight of the evidence claim is not cognizable in federal habeas review.

For the foregoing reasons, the Petitioner should be denied federal habeas relief on Ground Four.

## E.      Ground Five is procedurally defaulted in part and/or without merit

In Ground Five, Kyle contends that his appellate counsel was ineffective.  Doc. 1, p. 13.  Kyle's Petition sets forth 13 instances[19] of alleged ineffective assistance of appellate counsel:

---

[19] The Court's categorization of Kyle's claims as 13 instances of alleged ineffective assistance of appellate counsel is the result of combining statements with similar facts.

**Supporting Facts:** Appellate counsel performance fell below the standard one would expect from a lawyer practicing in the State of Ohio.  [1][20]  Counsel did not demonstrate trial counsel's failure to present the perjury the victim in this committed in open court; [2] did not demonstrate that the weapon allegedly used in this crime was in fact and inoperable weapon.  (authorities even expressed there were no signs of gun shots).  [3] Appellate counsel did not expose trial counsel's inappropriate relationship with the victim in this case.  [4] Counsel also failed to challenge the defective jury verdict forms and [5] did not challenge the court for its improper jury instructions.  [6] Appellate counsel did not show how the court had to step in and suggest that trial counsel object to the hearsay testimony being offered by one of the key witnesses.  Counsel over all was not prepared to appeal this case at an acceptable level of performance.[21]  [7] Trial counsel's performance fell below an acceptable standard when he failed to make keep objections during trial that the court had to remind him of in order to protect Appellant's rights, this should have been demonstrated by appellate counsel.  [2] Appellate counsel did not sufficiently challenge the operability of the shotgun when the victim herself stated the gun was broken because she had first pulled the weapon on Appellant.  [8] Counsel did not object to the Dove Report being completed by someone else other than the victim.  [9] Appellate counsel did not show that trial counsel allowed the State, without challenge, to submit pieces of wood as evidence of a firearm.  [10] Appellate counsel did not offer into evidence trial counsel's failure to challenge victim's mental state even though knowledge existed that he had mental health issues and was being medicated for the same, and that, [7] trial counsel allowed the State to regularly lead witnesses through their testimony; [11] that trial counsel never introduced the evidence of drug and alcohol being present at the scene of the crime, [12] [that trial counsel] allowed one key witness to go un-subpoenaed because she had a small child present and was afraid to be implicated because of a fear child services might be involved; that [13] trial counsel refused to defend this case as a crime of passion, that the Appellant walked in on his girlfriend having an orgy with numerous people with children present.

Doc. 1, p. 13.

As discussed below, of Kyle's 13 instances of alleged ineffective assistance of appellate counsel, 12 are procedurally defaulted and the remaining claim is without merit.

---

[20] The numbers in brackets do not appear in the Petition.  They have been added here for ease of reference.

[21] This statement is a general statement that appellate counsel was ineffective but does not allege a specific instance of ineffective assistance.

1.  **The Ground Five claims that were not fairly presented are procedurally defaulted**

In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  In his memorandum in support of jurisdiction filed in the Ohio Supreme Court, Kyle argued that appellate counsel was ineffective for failing to raise the issues of:

(1)  invalid jury forms;

(2)  the trial court's failure to notify Kyle of or journalize post release control provisions; and

(3)  excessive delay between his conviction and sentencing.

Doc. 11-1, Exhibit 15 (Kyle's memorandum in support of jurisdiction), pp. 109-11.

However, Kyle now seeks to argue ineffective assistance of appellate counsel based, in part, on different factual underpinnings.  Kyle's Petition, quoted above, sets forth 13 instances of alleged ineffective assistance of appellate counsel, 12 of which he did not fairly present to the state courts.  More particularly, Kyle cannot demonstrate that the claims identified above as claims [1], [2], [3], [5], [6], [7], [8], [9], [10], [11], [12], and [13] were fairly presented to the state courts in the same manner that he now presents them in his habeas Petition, nor can he show that state court remedies remain available to him to raise those claims.  Accordingly, those 12 claims of ineffective assistance of appellate counsel are procedurally defaulted unless Kyle can overcome the default, *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681 (a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts).

To overcome this procedural bar, Kyle must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or must show that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750. Kyle has not argued cause for failing to present his claims of ineffective assistance of appellate counsel to the state court in the same manner that he now presents those claims nor is cause apparent from the record before this Court.   Further, as discussed in connection with Ground Two, Kyle cannot demonstrate that the procedural default should be overcome on the basis that he is actually innocent.  *See* n. 13 above.

Since Kyle is unable to overcome the procedural default of the 12 claims of ineffective assistance of appellate counsel noted above, he should be denied federal habeas relief on those claims within Ground Five.

### 2.  The Ground Five claim that was fairly presented is without merit

In his memorandum in support of jurisdiction filed with the Ohio Supreme Court, Kyle fairly presented his claim that appellate counsel was ineffective for failing to argue that the jury verdict forms were defective. Doc. 11-1, Exhibit 15, pp. 109-11.  Thus, Kyle did not procedurally default that claim of ineffective assistance of appellate counsel.

The provisions of 28 U.S.C. § 2254(d) apply only to claims that were adjudicated on the merits in the state court proceedings.  *Waldron v. Jackson*, 348 F.Supp.2d 877, 888 (N.D. Ohio 2004) (citing *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004).  "When a state does not assess the merits of a petitioner's habeas claim, the deference due under AEDPA does not apply." *Id.*  "In such a case, the habeas court is not limited to deciding whether the court's decision was contrary to or involved an unreasonable application of clearly established federal [law], but rather conducts a *de novo* review of the claim." *Id.*   The Supreme Court has

determined that a summary ruling by a state court does not necessarily mean that the claim was not adjudicated on the merits.  *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 784-85.  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  *Id.*

Here, the Ohio Supreme Court denied Kyle leave to appeal and dismissed his appeal as not involving any substantial constitutional question.  Doc. 11-1, Exhibit 17, p. 133.  The Ohio Supreme Court's denial of leave to appeal with the statement that the appeal was "dismissed as not involving any substantial constitutional question," (Doc. 11-1, Exhibit 17, p. 133), under the standard enunciated in *Richter*, may be an adjudication on the merits for purposes of 28 U.S.C. § 2254(d).  *See Horton v. Warden, Trumbull Correctional Inst.*, 498 Fed. Appx. 515, 521, n. 1 (6th Cir. 2012).  However, since Kyle's ineffective assistance of appellate counsel claim was first raised before the Ohio Supreme Court and not evaluated by the state appellate court, the undersigned will provide Kyle, a *pro se* petitioner, the benefit of the doubt and conduct a *de novo* review of his ineffective assistance of appellate counsel claim rather than apply the deferential standard of review under 28 U.S.C. § 2254(d).[22]  *See e.g., Waldron*, 348 F.Supp.2d at 888.

The right to effective assistance of counsel extends to the first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387 (1984).  *Strickland v. Washington*, 466 U.S. 668 (1984), establishes the standard for assessing claims of ineffective assistance of counsel, including those relating to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (finding that *Strickland* provided

---

[22] Under either standard Kyle's claim fails.

the proper standard for addressing whether appellate counsel was ineffective for failing to file a merits brief); *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).  Appellate counsel is not obligated to advance every possible argument on appeal.  *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983); *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004).

To establish that his attorney was constitutionally ineffective, Kyle must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

As discussed below, Kyle has not and cannot satisfy the *Strickland* test.  To support his argument, Kyle primarily relies on the Ohio Supreme Court's decision in *State v. Pelfrey*, 112 Ohio St.3d 422 (2007).  Doc. 28, pp. 7-8.  In *Pelfrey*, the Ohio Supreme Court held that:

> Pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense.

*Id.* at 426.   Otherwise, "the 'guilty verdict constitutes a finding of guilty of the least degree of the offense charged.'"  *Id.* at 425 (quoting O.R.C. § 2945.75 (A)(2)).  Thus, Kyle asserts that, because his felonious assault verdict form did not include the offense charged, his appellate counsel was ineffective for failing to raise the issue on appeal.

Kyle was indicted for felonious assault under O.R.C. § 2903.11(A)/(2) F-2.  Doc. 11-1, Exhibit 1, p. 1.  Pursuant to O.R.C. § 2903.11(D)(1)(a), an individual who violates O.R.C. § 2903.11 can be found guilty of either a first or second degree felony.[23]  O.R.C. §

---

[23] Under O.R.C. § 2903.11(D)(1)(a), felonious assault is a first degree felony if the victim is "peace officer or an investigator of the bureau of criminal identification and investigation."  O.R.C. § 2903.11(D)(1)(a).

2903.11(D)(1)(a).  Kyle was convicted of and sentenced on felonious assault under O.R.C. § 2903.11(A)(1)/(2), a felony of the second degree, which is the least degree of the criminal offense of felonious assault under O.R.C. § 2903.11.[24]  Doc. 11-1, Exhibit 5, pp. 13-14.   Thus, since Kyle was convicted of the least degree of the criminal offense of felonious assault, Kyle cannot demonstrate that appellate counsel's representation fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688; *see also Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) ("[i]t is not necessary for appellate counsel to raise every nonfrivolous claim on direct appeal.").  Nor can Kyle demonstrate prejudice.  *Id.* at 694.

For the foregoing reasons, the Petitioner should be denied federal habeas relief on Ground Five.

## IV.    CONCLUSION and RECOMMENDATION

For the reasons stated herein, Kyle's grounds for relief are procedurally defaulted, not cognizable, and/or without merit.  Accordingly, the undersigned recommends that Kyle's Petition for writ of habeas corpus (Doc. 1) be **DENIED**.

Dated: October 3, 2013

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the

---

[24] To the extent that Kyle attempts to argue that, because the felonious assault jury verdict form did not contain the degree of offense, he should only have been convicted of assault or attempted felonious assault (Doc. 28, p. 8), Kyle's arguments are unsupported and/or are not fully articulated.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).